UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE JOSEPH NOBLE IV, <br><br> Plaintiff, <br><br> vs. <br><br> V. J. GONZALES, <br><br> Defendant. | Case No. 1:07 cv 01111 LJO GSA PC <br><br><br> FINDINGS AND RECOMMENDATION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> (ECF NO. 49) <br><br><br> OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Pending before the Court is Defendant's motion for summary judgment. Plaintiff has opposed the motion.[1]

---

[1] Defendants' motion for summary judgment was filed on May 29, 2013. On the same date, Defendant served Plaintiff with the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

1

## I. Procedural History

This action proceeds on the February 24, 2009, first amended complaint, filed in response to an earlier order dismissing the complaint and granting Plaintiff leave to file an amended complaint. Plaintiff, currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) at CSP Sacramento, brings this action against Defendant Lieutenant V. J. Gonzales, a correctional official employed by the CDCR at North Kern State Prison, where the event at issue occurred.

On June 27, 2012, an order was entered, finding that the first amended complaint stated a claim for relief against Defendant for retaliation in violation of the First Amendment.[2] Defendant filed a motion for summary judgment on May 29, 2013, On May 5, 2013, Plaintiff filed an opposition. Plaintiff filed an amended opposition on October 28, 2013. Defendant filed a reply on November 18, 2013.

## II. Allegations

Plaintiff alleges that between April 2006 and July 2006 he filed two inmate grievances which affected numerous prison officials. Both grievances were granted in Plaintiff's favor. Plaintiff alleges that on July 20, 2006, he was attacked by several prison guards in retaliation for filing and litigating the grievances.

As a result of the attack, Plaintiff was issued a CDC-115 Rules Violation Report (RVR), charging him with attempted battery on a peace officer. Plaintiff was placed in Administrative Segregation (AdSeg) to await adjudication of the RVR.

On September 7, 2006, while confined in AdSeg, Plaintiff was subjected to a disciplinary hearing presided over by Lt. Gonzalez, who acted as the Senior Hearing Officer. Plaintiff sought to call witnesses and introduce documentary evidence and a video recording at the hearing. Lt.

---

[2] On March 8, 2012, an order was entered by the District Court, adopting the findings and recommendations of the magistrate judge and dismissing Plaintiff's due process claim.

2

Gonzalez refused to allow Plaintiff to call any witnesses, present evidence, or speak on his own behalf. Lt. Gonzalez arbitrarily pronounced Plaintiff guilty and assessed penalties, causing a major disruption in Plaintiff's environment.

On November 20, 2006, Plaintiff was adversely transferred from NKSP to High Desert State Prison (HDSP), a Level IV facility located over 350 miles from his family. At HDSP, all of Plaintiff's personal property was withheld from him until January 12, 2007, and even then a substantial amount was confiscated by HDSP officials, including a radio, headphone accessories, clock, clothing, books, magazines, photos, food items and cosmetics – all items which were authorized on a Level III facility but not on a Level IV facility. These hardships were imposed upon Plaintiff in spite of the fact that on November 17, 2006, officials were ordered to "reissue/rehear" the RVR, based on the due process violations that occurred at the September 7, 2006, disciplinary hearing presided over by Defendant. Plaintiff did not receive a rehearing until July 31, 2007, and only then because Plaintiff filed two habeas corpus petitions in state court.[3] Prison officials have admitted that the findings of the RVR were not appropriate or in accordance with the rules, regulations and policies of NKSP. At the time Plaintiff filed this action, he had not received a rehearing of the RVR.

### III.  Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and

---

[3] Plaintiff states in the First Amended Complaint that he received a rehearing on "June 13, 2007." Am. Compl. at 6:19. However, Plaintiff makes a correction in his opposition to Defendant's motion for summary judgment, stating that "[i]n the Complaint I mistakenly dated the rehearing as 'June 13, 2007.' The actual date of the rehearing was July 31, 2007." Opp'n, Doc. 27 at 11, fn. 4.

> admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denial of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,

369 U.S. 654, 655 (1962)(per curiam)).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985)(aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is not 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

///

## IV.   Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim.  Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995)(quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of."  Pratt, 65 F.3d at 808.

Defendant supports his motion with his own declaration and the deposition of Plaintiff. Regarding the events at issue, Defendant declares the following.

> As part of my duties as a Correctional Lieutenant, I am responsible to adjudicate Rules Violation Reports (RVRs). I am occasionally asked to conduct RVR hearings of inmates within my assigned facility.
>
> In September 2006, I was asked to conduct a RVR hearing for Inmate Steve Noble, an inmate housed outside of my assigned facility. I recall that I was asked to conduct the hearing on short notice, possibly the day before or the day of the hearing, September 7, 2006. I did not recall ever meeting or hearing about inmate Steve Noble prior to the September 7, 2006, hearing.
>
> I conducted the RVR hearing on September 7, 2006, and that was the only time that I recall having any contact with Steve Noble.
>
> I never interviewed Steve Noble or responded to Noble's inmate appeals. I was not aware of Steve Noble's inmate appeals or lawsuits at the time I conducted the September 7, 2006, RVR hearing, other than the citizen's complaint that Noble filed against the officers involved in the July 20, 2006, incident which Noble submitted as evidence at the RVR hearing. I was not aware of Plaintiff Steve Noble's inmate appeals and lawsuits until after this lawsuit was filed against me.
>
> I was not present during the July 20, 2006, incident involving Plaintiff Steve Noble and NKSP correctional staff that led to Noble's RVR hearing I conducted on September 7, 2006. I was not aware of the specific details of the July 20, 2006, incident until I conducted the RVR hearing on September 7, 2006.
>
> To my knowledge, I have not been a party to any of Plaintiff Steve Noble's other lawsuits and I have not testified or provided an affidavit related to any of Plaintiff Noble's other lawsuits.
>
> I had no motive or desire to retaliate against Plaintiff Steve Noble, and none of my actions while conducting the September 7, 2006 RVR hearing were meant to retaliate against Steve Noble.

(Gonzalez Decl. ¶¶ 2-8.)

In his deposition, Plaintiff concedes that he had never met Defendant prior to the RVR hearing, and that he did not have any contact with Defendant after the hearing. (Dep. 51:21-

52:8.) Regarding the appeals that were the basis for the RVR hearing, Plaintiff testified as follows:

> Q. Okay. So the appeals that you're referencing, what specific appeals do you believe you were retaliated against for filing?
>
> A. Well, there were numerous appeals, but two that initiated everything. One was dealing with vegetarian diets.
>
> Q. Okay.
>
> A. I was requesting a vegetarian diet.
>
> Q. Okay. I want to ask you on that one. Do you remember when you filed that?
>
> A. Let's see. I may have that information here. Let me see here. Well, I don't have the date. I'm sorry.
>
> Q. Okay. No problem. Let me ask you this: Did you file that appeal before you arrived at North Kern State Prison?
>
> A. No.
>
> Q. Okay. So can you summarize for me what the issue was in that appeal?
>
> A. The issue was, according to state law, I was entitled to receive a vegetarian diet, as a Muslim. This was a new rule that had just been implemented throughout the State of California that provided us with these diets. No one at North Kern on this particular facility that I was on was getting them. I was the first inmate to request them, which meant that officers now had to make a special meal - - and the dining officers, the facility cooks, everybody, had to make a special meal just for me. And they had to deliver this meal to me on lockdown. You know, it made - - it angered a lot of people. At first they told me different things. You'll see the appeal is an exhibit. They told me, 'we're not providing you with that. If you want your religious dietary needs met, trade your food with other inmates. And if you don't like that, you know what you can do,' meaning I can appeal, which I did. The appeal was granted. I was never provided with the meal. I filed a second appeal. That one was granted. Different people - - different officials were notified and told to handle this and do what they need to do. And the following day when I asked for my meal, I was jumped on.

7

| | | |
|---|---|---|
| 1 | Q. | Okay. So with - - with - - you said you filed two appeals on this vegeterian- diet issue, correct? |
| 2 | A. | Right. |
| 3 | Q. | Did Lieutenant Gonzalez ever interview you as a part of those appeals? |
| 4 | A. | No. |
| 5 | Q. | Did he respond to any of your appeals? |
| 6 | A. | No, he didn't. |
| 7 | Q. | Do you have any information that he knew about either of those appeals? |
| 8-9 | A. | Well, those are all his coworkers. The brass and everybody, they was all in – they all knew what was going on. This affected a lot of people on that yard, so I'm assuming he did know. |
| 10 | Q. | Okay. But do you have - - |
| 11 | A. | I have no – no, I have no information that says he knew. |

(Id. 54:6-56:17.)

Plaintiff also filed another inmate grievance concerning false and derogatory information that was provided to a "deputy district attorney general" in another civil rights matter. Plaintiff testified that Defendant was not named in that case, that he did not interview Plaintiff regarding that grievance, and that Plaintiff did not receive any response to his appeal authored by Defendant. Plaintiff testified that "a committee member by the name of "Gonzalez' was a part of that hearing, but I don't know if they're any relation." (Id. 59:1.) Regarding other grievances, Plaintiff testified that

| | | |
|---|---|---|
| 19-20 | Q. | So after the RVR hearing conducted by Lieutenant V. J. Gonzales, did you file any CDC 602 appeals? |
| 21 | A. | Yes. |
| 22 | Q. | Okay. And you did file an appeal regarding that hearing; correct? |
| 23 | A. | Correct. |

8

| | | |
|---|---|---|
| Q. | | And besides the appeal regarding that specific hearing, did you appeal any other issues - - any kind of issues after the hearing? |
| A. | | Yes. |
| Q. | | Okay. And how many? How many appeals would you say you've filed since September 7th of 2006? |
| A. | | Dealing with this issue? |
| Q. | | No. Just in general. |
| A. | | Oh, I don't know. |
| Q. | | Well, I'll ask you for an estimate, then. Would you say over 20 appeals? |
| A. | | No. |
| Q. | | Okay. Over ten? |
| A. | | Thereabout. |
| Q. | | Okay. And can you estimate for me how many of those appeals you have exhausted to the third level? |
| A. | | I would say every one I've filed unless it was granted at a lower level. |

(Id. 59:11-60:10.)   Plaintiff also testified regarding various lawsuits he has filed, stating that Defendant was not a party to any of his other lawsuits.  (Id. 63:24.)   Plaintiff also testified that he does not have any information that Defendant knew about any of his other lawsuits.  (Id. 64:7.)

The Court finds that Defendant has met his burden on summary judgment.  Defendants's declaration establishes that he did not know Plaintiff prior to the RVR hearing.  Defendant's declaration establishes that he was not present at the July 20, 2006, incident involving Plaintiff that lead to the hearing on September 7, 2006, and was not aware of the specific details of the July 20, 2006, incident until he conducted the RVR hearing.  Further, Plaintiff's own testimony establishes that he has filed approximately ten more inmate appeals and has exhausted every one except those granted at a lower level.  Plaintiff's testimony establishes that he has continued to

9

pursue multiple legal actions, both civil and habeas corpus actions, since the September 7, 2006, hearing.

Defendant's evidence establishes that the only conduct he engaged in was presiding over the September 7, 2006 hearing. Defendant's declaration and Plaintiff's deposition establishes the lack of existence of a triable issue of fact – the evidence establishes that Defendant took no adverse action against Plaintiff, or any action against Plaintiff as a result of the September 7, 2006, hearing. The evidence establishes that Plaintiff's ability to exercise his First Amendment rights was not chilled. Plaintiff was able to pursue all of his grievances through either exhaustion at the final level or the granting of relief at a lower level. The only evidence of any conduct by Defendant is his participation in the hearing, at which Plaintiff was found guilty after due process. As noted, Plaintiff's due process claims regarding the hearing were dismissed.[4]

The burden shifts to Plaintiff to come forward with evidence of a triable issue of fact – evidence that establishes, without dispute, that Defendant took some adverse action against Plaintiff because of his protected conduct, and that action chilled Plaintiff's exercise of his First Amendment rights and did not reasonably advance a legitimate penological goal. In opposition, the Court considers Plaintiff's opposition, supplemental opposition, and exhibits included in support. The Court also considers Plaintiff's arguments submitted on pages 128-147 of his exhibits to his opposition.[5]

---

[4] As noted the in the recommendation that Plaintiff's due process claim be dismissed, the September 7, 2006, hearing was ordered re-heard based on due process violations. Plaintiff's good time credits were restored, and Plaintiff had not had a rehearing at the time this lawsuit was filed. (ECF No. 29.) Further, Plaintiff had been transferred to High Desert State Prison prior to the order directing that the September 7, 2006, RVR hearing be re-heard.

[5] Because the February 24, 2009, first amended complaint on which this action proceeds is not signed under penalty of perjury, the Court will not consider it as an affidavit in support of Plaintiff's opposition. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)(per curiam); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(c)(4).

In his opposition, Plaintiff argues, without evidentiary support, that he was "subjected to a disciplinary proceeding presided over by the Defendant that was retaliatory in nature and motivated by evil intent and a callous disregard for Noble's Constitutional rights." Plaintiff argues that his transfer to High Desert State Prison on November 20, 2006, was a retaliatory transfer. Plaintiff offers no evidence, however, that Defendant was in any way involved in the transfer, or had any authority to direct such a transfer. That Plaintiff had to wait over a year at High Desert State Prison for a rehearing, while being "subjugated to the full panoply of penalties related to the voided RVR" does not subject the Defendant in this case to liability.

Plaintiff's argument in his opposition is taken up with a detailed chronology of all of his inmate grievances and difficulties he has encountered due to the conduct of various correctional officials. Plaintiff appears to argue that because the officials are colleagues of Defendant, Defendant is somehow liable for retaliation, based upon Plaintiff's difficulties in litigating his grievances and lawsuits. Plaintiff has not, however, come forward with any evidence that establishes that Defendant engaged in any conduct other than presiding over the RVR hearing. That Plaintiff was denied the opportunity to call witnesses does constitute retaliation on the part of Defendant. Plaintiff's remedy lay in the rehearing, which was granted. Plaintiff does not dispute that the RVR was ordered re-heard. That Plaintiff encountered a delay in the rehearing at another facility does not constitute retaliation on Defendant's part. Plaintiff must come forward with evidence that Defendant engaged in some specific conduct that was adverse to Plaintiff, and evidence that the conduct was motivated by the RVR hearing, and that Plaintiff's ability to pursue his First Amendment rights were chilled. Plaintiff's own testimony established that he had no interaction with Defendant either before or after the RVR hearing. Plaintiff's subjective belief that Defendant had some retaliatory motive in conducting the September 7, 2006, RVR hearing is unsupported by evidence.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment be granted in favor of Defendant and against Plaintiff.

11

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Tile 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998). Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1152 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **December 12, 2013**

**/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE